**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARCUS EDWARDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-952 |
| | § | |
| LIFE INSURANCE COMPANY | § | |
| OF NORTH AMERICA, & CIGNA | § | |
| HEALTH & LIFE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PRELIMINARY STATEMENT**

1.      Plaintiff Marcus Edwards hereinafter referred to as "Plaintiff," brings this ERISA action against the Life Insurance Company of North America and Cigna Health and Life Insurance of North America, collectively referred to as "Defendant." Plaintiff brings this action to secure Critical Illness Heart Attack Benefits, to which Plaintiff is entitled under a group critical illness insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of Tiffany Edwards, the policy holder and his spouse, under her employment with Korn Ferry.

**PARTIES**

2.      Plaintiff is a citizen and resident of Dallas County, Texas.

3.      Defendant is a properly organized business entity doing business in the State of Texas.

2

4.      The plan at issue in the case at bar was funded and administered by Defendant.

5.      Defendant is a properly organized business entity doing business in the State of Texas.   Defendant may be served with process by serving its registered agent, C T Corporation System, addressed at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-4284.

## JURISDICTION AND VENUE

6.      This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7.      Venue in the Southern District of Texas is proper by virtue of Defendant doing business in the Southern District of Texas.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id*.)  "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District*

3

*Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*). See Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993).  The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant.  *Varsic*, 607 F.2d at 248."  *See Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007).   Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States.  See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 825-26 (5th Cir. 1996)*, citing *Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)*.  Here, Defendant is "found" within the Southern District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## **CONTRACTUAL AND FIDUCIARY RELATIONSHIP**

8.      At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Plan Policy No. CI961170.

9.      Said policy became effective January 1, 2020.

10.      At all relevant times, Defendant has been the claims administrator of the group critical illness policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

11.      At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

4

12.     Defendant has a fiduciary obligation to administer the Plan fairly and to furnish benefits according to the terms of the Plan.

13.     Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

14.     Critical Illness benefits under the Plan have been insured in accordance and pursuant to Policy No. CI961170 issued by Defendant.

15.     Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

16.     Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

17.     Because of the conflict of interest described above, this Court should consider Defendant's decision to deny benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

18.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan

19.     Except as stated in paragraph 16 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

20.     In order for the Plan Administrator's decisions to be reviewed by this Court

5

under an "arbitrary and capricious" standard and not a *"de novo"* standard, the Plan must

properly give the Plan Administrator "discretion" to make said decisions within the plain

language in the Plan.

21.     Plaintiff contends that the Plan fails to properly give Defendant discretion

under the Policy.

22.     Further, when a Defendant violates the Department of Labor regulations,

Defendant effectively forfeits its discretionary authority. When denying a claim for

benefits, a plan's failure to comply with the Department of Labor's claims-procedure

regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in

federal court, unless the plan has otherwise established procedures in full conformity with

the regulation and can show that its failure to comply with the claims-procedure regulation

in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health*

*Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also

*Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and

*Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14,

2021).

23.     Defendant committed the following violations demonstrating its failure

furnish a full and provide review:

i.      Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii.     Inadequate notice of the information needed to perfect Plaintiff's appeal.
        29 C.F.R. § 2560.503-1(g)(1)(iii);
iii.    Failure to follow Defendant's own claims procedures 29 C.F.R. §
        2560.503-1(b);
iv.     Failure to adopt guidelines to ensure that similarly situated claims are
        administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

6

v.      Failure to administrative Plaintiff's claim consistently 29 C.F.R. §
        2560.503-1(b)(5);
vi.     Failure to provide requested relevant documents timely. 29 C.F.R. §
        2560.503-1(h)(2)(iii);
vii.    Failure to describe the guidelines and protocols relied upon. 29 C.F.R. §
        2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);
viii.   Failure to obtain the review of appropriate medical professional. 29 C.F.R.
        § 2560.503-1(h)(3)(iii);
ix.     Failure to obtain an appeal review of a different non-subordinate medical
        professional. 29 C.F.R. § 2560.503-1(h)(3)(v);
x.      Failure to obtain an appeal review that does not defer to the prior
        determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xi.     Failure to obtain an appeal review that is conducted by a different non-
        subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xii.    Failure to give a claimant an opportunity to review and refute the report of
        a reviewing physician obtained during the appeal review. 29 C.F.R. §
        2560.503-1(h)(4);
xiii.   Failure to take into account all comments, documents, records, and other
        information submitted to the claimant or by the claimant relating to the
        claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

24.    Defendant's violations of the regulations were not inadvertent or harmless.

25.    Plaintiff contends that because Defendant failed to furnish a full and fair review,

Defendant has relinquished its discretionary authority under the Plan.


26.    In Texas, for insurance policies, certificates or riders offered, issued, renewed or

delivered on or after February 1, 2011 said "discretionary clauses" are prohibited under

1701.062(a) Texas Insurance Code.

27.    Further, for insurance policies issued prior to February 1, 2011 that do not contain

a renewal date, said discretionary clause prohibition applies after June 1, 2011 upon any

rate increase or any change, modification or amendments on or after June 1, 2011.

28.    Plaintiff contends that the Plan fails to give the Defendant said discretion as said

7

discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

29.      Pursuant to *Ariana M. v. Humana Health Plan of Texas*, 884 F.3d. 246, 249 (5th

Cir. 2018), (overruling *Pierre v. Conn. Gen. Life Ins. Co.*, F2d. 1562 (5th Cir. 1991), the 5th

Circuit has recently held that absent a valid grant of discretion, both the "interpretation of

plan language" and "factual determinations" are to be reviewed by the court under a *de*

*novo* standard.    Therefore, pursuant to *Ariana*, the court should review this matter *de*

*novo*.

30.      ERISA does not preempt state bans on discretionary clauses because of the

"savings clause."   ERISA preempts "any and all State laws insofar as they … relate to

any employee benefit plan."  The "savings clause," however, preserves "any law … which

regulates insurance…".  To fall within the savings clause, a state law must: Be "specifically

directed toward entities engaged in insurance" and "substantially affect the risk pooling

arrangement between the insurer and the insured."   *Kentucky Association of Health*

*Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

31.      Defendant's discretionary ban is therefore not preempted by ERISA and the

Standard of Review for the Court in reviewing this action is *de novo*.

32.      Further, Defendant has a fiduciary obligation to administer the Plan fairly and to

furnish benefits according to the terms of the Plan.

**ADMINISTRATIVE APPEAL**

33.      Plaintiff alleges that he became disabled on March 1, 2019.

34.      Plaintiff filed for the Critical Illness benefit under Heart Attack with Defendant. The

Plan defines "Critical Illness – Heart Attack" as follows:

8

*"An identifiable clinical event that results in ischemic death of a portion of the heart muscle confirmed by diagnostic testing through:*

*1.      electrocardiographic (EKG) changes indicative of myocardial infarction. In the case of myocardial infarction ST wave changes, Q wave changes and/or T wave inversion must be documented and included as one of the criteria on establishing a diagnosis; and,*
*2.      elevation of cardiac enzyme markers of myocardial injury.*
*In the event of death, an autopsy confirmation and/or death certificate identifying myocardial infarction as the cause of death will be accepted.*
*The Date of Diagnosis is the date that the ischemic death of a portion of the heart muscle occurred."*

35.     The Plan provides for a benefit of $15,000.

36.     On February 24, 2021, Defendant denied Plaintiff's Critical Illness Benefit.

37.     Defendant's denial letter found that Plaintiff had not suffered a heart attack under the "Heart Attack" definition and allowed Plaintiff 180 days to appeal this decision.

38.     Defendant's termination letter failed to consider Plaintiff's medical data, clinical examination findings, and varying diagnostics demonstrated that his heart attack met the terms of the policy.

39.     Defendant's denial letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect his appeal.

40.     On April 23, 2021, Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

41.     Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

42.     Plaintiff submitted additional information including medical records to show that he experienced a "heart attack" as defined by the terms of the Plan.

43.     Defendant notified Plaintiff that Defendant upheld its original decision to deny Plaintiff's claim for Critical Illness benefits on November 18, 2021.

44.     Defendant also notified Plaintiff that Plaintiff had exhausted his administrative remedies.

45.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented findings regarding Plaintiff's claim.

46.     Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

47.     Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments, eventually causing him to experience a heart attack on March 1, 2019.

48.     Treating physicians documented unable angina, NSTEMI (myocardial necrosis), left heart catheterization (coronary angioplasty with stent placement) and was prescribed aspirin and clopidogrel at the time of the NSTEMI and Q wave changes in reaching their diagnosis of a heart attack.

49.     Defendant has argued that although the medical information in the file documents NSTEMI, it never occurred because there was no elevation of troponin.

50.     Plaintiff submitted medical documentation demonstrating that each of the requisite elements of a "heart attack" under the policy were present.

51.     However, Defendant persists in denying Plaintiff his rightfully owed Critical Illness benefits.

10

## DEFENDANT'S CONFLICT OF INTEREST

52.    At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

53.    Defendant's determination was influenced by its conflict of interest.

54.    Defendant's reviewing experts are not impartial.

55.    Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

56.    Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

57.    Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

58.    Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

59.    Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

60.    Plaintiff incorporates those allegations contained in paragraphs 1 through 59 as

11

though set forth at length herein.

61.     Defendant has wrongfully denied benefits to Plaintiff in violation of Plan provisions

and ERISA for the following reasons:

   a.     Plaintiff experienced a documented "heart attack" as described under the

          terms of the Plan;

   b.     Defendant failed to afford proper weight to the evidence in the

          administrative record showing that Plaintiff meets the terms for Critical

          Illness;

   c.     Defendant's interpretation of the definition of "heart attack" contained in the

          policy is contrary to the plain language of the policy, as it is unreasonable,

          arbitrary, and capricious; and

   d.     Defendant has violated its contractual obligation to furnish benefits to

          Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

62.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 61 above.

63.     By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms

of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which

Plaintiff has and will continue to incur attorney's fees.   Plaintiff is entitled to recover

reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of

ERISA, 29 U.S.C. §1132(g)(1).

        WHEREFORE, **Plaintiff demands judgment for the following:**

   A.     Grant Plaintiff declaratory relief, finding that he is entitled to Critical Illness

12

benefits yet unpaid;

B.     Order Defendant to pay Plaintiff the Critical Illness Benefit under Heart

Attack as permitted in the Plan, plus pre-judgment interest;

C.     Order Defendant to pay for the costs of this action and Plaintiff's attorney's

fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

D.     For such other relief as may be deemed just and proper by the Court.


Dated:  Houston, Texas
        June 30, 2022


                              Respectfully submitted,

                              MARC WHITEHEAD & ASSOCIATES,
                              ATTORNEYS AT LAW L.L.P.


                              By:     /s/ Britney McDonald
                                      Britney Anne Heath McDonald
                                           Tex. Bar. No. 24083158
                                           Fed. I.D. No. 2621983
                                           britney@marcwhitehead.com
                                      Madison Tate Donaldson
                                           Tex. Bar No. 24105812
                                           Fed. I.D. No. 3151467
                                           madison@marcwhitehead.com
                                      Selina Valdez
                                           Tex. Bar No. 24121872
                                           Fed. I.D. No. 3633062
                                           selina@marcwhitehead.com
                                      Marc S. Whitehead
                                           Tex. Bar No. 00785238
                                           Fed. I.D. No. 15465
                                           marc@marcwhitehead.com
                                      J. Anthony Vessel
                                           Tex. Bar. No. 24084019
                                           Fed. I.D. No. 1692384

13

anthony@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
MARCUS EDWARDS